Campbell v. Fierlein.

### David C. Campbell et al. v. Baxter J. Fierlein.

#### Gen. No. 13.290.

1. EMPLOYER AND EMPLOYE—*burden of showing sufficient grounds for discharge.* The burden of showing good and sufficient grounds for discharge rests upon the employer invoking such as a defense after the servant has proven the contract and its performance by him up to the time of his dismissal.

2. FALSE REPRESENTATIONS—*when instruction as to, improper.* An instruction upon the subject of false representations is improper where it omits the element of knowledge of falsity upon the part of the party alleged to have made them at the time when it was claimed that they were made.

3. INSTRUCTION—*propriety of refusing, containing an abstract proposition of law.* An instruction which contains an abstract proposition of law may be refused by the court without commission of error.

4. INSTRUCTION—*must not assume facts in dispute.* An instruction is properly refused which assumes the existence of facts in dispute.

Assumpsit. Appeal from the Superior Court of Cook county; the Hon. ROBERT W. WRIGHT, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed May 31, 1907.

MOSES, ROSENTHAL & KENNEDY, for appellants.

ALAN C. McILVAINE, for appellee.

MR. JUSTICE HOLDOM delivered the opinion of the court.

The action here is assumpsit, and arises out of a contract of employment. The appellants were doing business under the style of "Campbell Investment Company," selling real estate. One of their firm activities was the selling of lots in a subdivision known as "Oak Lawn," situate about thirteen miles southwest of Chicago, sufficiently contiguous to the city to bring it within the designation of a Chicago suburb. The appellants employed appellee to work for them in their business of selling lots for six months at a weekly compensation of $75. The contract of employment was contained in a letter written by appellee to the appellants, which they accepted. By its terms the service commenced April 18, 1904, and was to end on the same day in the month of October following. Appellants discharged appellee from their employ July 23, 1904. They insist the discharge was for cause: That appellee violated the conditions of his contract of employment. A trial before the court and jury resulted in a verdict for $975, from which, on a motion for a new trial, appellee remitted the sum of $115, and the court, after overruling appellants' motion for a new trial, rendered judgment for $860 and costs of suit. Appellants preserved the usual exceptions to the adverse rulings of the court and bring the cause here for review upon due assignment of errors, and ask that the judgment of the Superior Court be reversed.

The amount of *remittitur* is made up of $43, an amount in excess of that unpaid upon the contract, which in all probability resulted from a miscalculation on the part of the jury, and of $72 which appellee could have earned during the last ten days of the

contract if he had availed of the employment offered him by the Columbian Three Color Company at $50 per week.

Appellants urge in argument the following as reasons requiring a reversal of the judgment:

1st. Disobedience of orders and neglect of duty.

2d. Gambling and playing the races.

3d. Misrepresentations and false statements to customers.

4th. That the verdict is contrary to the weight of the evidence.

5th. Failure of appellee to make reasonable effort to find other employment.

6th. Improper and prejudicial conduct of the trial judge.

The questions here argued are mainly of fact, and their solution primarily the function and province of the jury. Upon the main facts essential to sustain in the first instance the claim of appellee there is no dispute. The conflict in the testimony is found in the evidence supporting the defense.

The contract of employment and all of its conditions are admitted. That appellee entered upon the service at the specified time, and was ready and willing to continue in such service during all the life of the contract is uncontradicted, so that unless the cause of discharge alleged by appellants is sustained by the proofs in the record, the judgment of the trial court must stand.

The results of appellee's efforts in the service of appellants during the time they permitted him to work in their interests seem, from the proofs, to have been fairly efficient and remunerative. The disobedience of orders relied upon as justifying appellee's discharge consists in failing to see one Schroeder, at Curtis, Wisconsin. Charles P. Campbell, one of the appellants, testifies that he told appellee, upon his return from the trip he was making when he failed to call on Schroeder, that he must not do that again.

This was in May. In July, 1904, appellee proceeded on a lot-selling trip through western Pennsylvania, and as far east as Washington, D. C. It is claimed that in disobedience of his orders, he did not call on either Fulton Bros., or Mrs. J. M. Greer, at Cannonsberg, Pennsylvania; J. R. Alexander, at Washington, D. C.; D. R. Doty, at New Kensington, and a Miss Berger, at Cleveland, and that he refused to take one J. H. Hubbard of Cox, Missouri, when in Chicago, out to see some lots.

Appellee makes what would seem to be satisfactory explanations of his conduct in all these cases. In the first place, appellee says C. P. Campbell told him that in visiting people on his journeyings he must use his discretion; that if the place was out of the way, inconvenient to get at, the expense, in his judgment, excessive, or the prospect of accomplishing a sale doubtful in his judgment, to omit visiting such persons and places.

Appellee says Schroeder was at a remote place, which was expensive to reach, requiring considerable time, and in the exercise of his best judgment he refrained from going to him. To say the least this, if an offense, was condoned. At least it may be said to be excusable.

Appellee says he was unable to find Miss Berger at Cleveland. This was an all-sufficient excuse in the absence of any evidence that she could have been readily found, or that appellee had information as to the place in Cleveland where he could find her. Doty was at an out of the way place. The door had been closed in appellee's face at Washington by one person he called upon, and deeming it inexpedient to attempt making sales to Alexander or others there, he left Washington without making any further effort. This action on appellee's part the jury may have concluded to have been in accord with his best judgment and in the interests of his employers. As to refusing to take Mr. Hubbard, of Cox, Missouri, out to see some lots, he

explains that having other business of the firm in hand, it was arranged that John Campbell should go out with Hubbard, and positively denies that he refused to go out with Hubbard. Again, it is said appellee made false representations to the Rev. Mr. Prugh that nearly all of the lots in the "Oak Lawn" subdivision had been sold. There is no evidence that appellee made this statement wilfully with the knowledge that it was false. Nor does it appear that any prospective sale was lost by reason of it. C. P. Campbell did not appear to regard this lapse from exact truth with high displeasure, for he but mildly chided appellee, writing him that "While it may be a mark of good salesmanship to impress upon our customers the fact that nearly all the lots are sold, yet I think you have overstepped the truth a little."

Appellants insist that appellee was discharged for disobedience of orders. That some little time after appellee's return from the Eastern trip, C. P. Campbell called him into the office and notified him that he was discharged for failing to call upon the persons heretofore named, according to instructions. The insistence of appellants is supported solely by the testimony of appellant C. P. Campbell. Incidentally Campbell also claimed that appellee did not observe the regulation office hours, and that he "played the races." To the former of the latter two charges appellee says, in the first place, he never was informed in relation to any office hours, and in the second place, he was not an office man and had no office duties, but was an outside man, whose duty consisted in showing property and traveling in soliciting non-residents to purchase real estate which his employers had for sale. He admits "playing the races" and losing fifty dollars. This loss seems to have acted as a curative of a tendency to a bad habit. This occurred in the month of June, and his discharge dated from July 23rd. There is nothing in the proof justifying any inference that the reprehensible act of gambling at

all interfered with his efficiency as a salesman for appellants, or that appellants regarded it at the time, as a cause for discharge.

The burden of showing good and sufficient grounds for discharge rests upon the employer invoking such as a defense after the servant has proven the contract and its performance by him up to the time of his dismissal. Mercer v. Whall, 48 E. C. L. 447; School Directors v. Reddick, 77 Ill. 629; Morris v. Taliaferro, 44 Ill. App. 359.

In this condition of the evidence it was for the jury to say whether the defense was sustained, or whether the causes assigned for discharge were mere pretenses, made in an effort to escape the binding obligation of an expensive contract. The jury may have believed the latter from all the evidence, the manner and appearance of the witness Campbell when testifying, his attitude of frankness or evasiveness, if such were apparent, especially having in mind the evidence of appellee, that Campbell was willing to enter into a new contract at the reduced salary of $35 per week. The jury had the right to treat as verity the evidence of appellee and to disbelieve the denial of Campbell.

We think the testimony fairly establishes as a fact that appellee, after his discharge, made consistent, reasonable effort to procure other employment, and we are no more impressed with the weight of the testimony of the witness Hobbs on this point than were the jury. It is impotent in overcoming the detailed statement of persistent, intelligent effort by appellee to obtain employment. Hobbs, with all his wordy pretentions, neither procured other work for appellee nor offered him any position, temporary or permanent. Hobbs admits that his memory was hazy about the dates he talked with appellee, and the most that can be gathered from his testimony is that he offered some suggestions to appellee, which might, if followed, have resulted in his procuring another position.

We cannot yield our assent to the claim that re-

marks made by the trial judge in his rulings during the trial were prejudicial to appellants' interests. The strictures upon the conduct of the trial judge found in appellants' brief are neither warranted nor justified by the record.

The conversation of Campbell with Dr. Prugh, sought through Campbell to be injected as evidence that appellee's misrepresentation to Dr. Prugh was prejudicial to the interests of appellants in a material way, was properly excluded upon appellee's objection. Such evidence would be clearly hearsay and inadmissible. Certainly this would be so without the assignment of any reasonable excuse for Dr. Prugh not appearing upon the trial or his evidence having been preserved by deposition. The authorities cited to maintain the contention that the ruling of the court in excluding this testimony was erroneous, are none of them in point on the facts found in this record.

We have examined all the instructions about which appellants complained, and are unable to discover any vice in them justifying a reversal.

The third refused instruction omitted the essential element of knowledge on the part of appellee that the representations made by him to Dr. Prugh were by him known to be false when made.

The sixth instruction refused was objectionable. It contains an abstract proposition of law, not calculated to enlighten the jury and not favored by the courts. It also erroneously assumed that appellee had been derelict in the duty he owed his employers. This was misleading. Whether or not appellee had so conducted himself as to warrant appellants in discharging him, was a burden the law cast upon appellants to maintain, and it was for the jury to decide, as a question of fact, whether such defense was sustained by the proof.

We do not think the judgment is against the weight of the evidence, but on the contrary that it is amply supported by it. On the whole evidence appellee is entitled to recover.

We find no harmful error in this record warranting a disturbance of the judgment rendered by the Superior Court, and its judgment is therefore affirmed.

*Affirmed.*