Opinion by
Mr. Justice Schauer.
The parties appear here in the same order as they appeared in the trial court, and will be referred to as they there appeared.
Plaintiff, as lessee, and defendant, as lessor, entered *554 into a written lease of an office in defendant’s new, partly completed, office building in Lakewood, Colorado. The lease was dated August 8, 1961. Its term was to commence September 1, 1961, and was for three years, at a monthly rental of $105.38, payable in advance. Plaintiff paid rent for one month in advance at the time he signed the lease.
In his complaint, filed February 7, 1962, plaintiff sets forth various conflicting claims of the parties relative to conversations between himself and agents for defendant, and alleges an oral modification of the terms of the lease. He then states the following:
“By reason of these conflicting claims plaintiff is in great doubt as to whether any rent is owing to, or may be claimed by, defendant herein; if so, then the amount thereof; and if not, then as to when and under what conditions such rent is so payable or may be so claimed.”
He prays for a declaratory judgment to the effect that plaintiff owes no rent until the leased premises are completed and ready for occupancy; that plaintiff took posession of the premises; that defendant demanded payment of rent; that plaintiff tendered rent but owes no rent because the leased premises have never been completed and made ready for occupancy as a law office. He further prays damages for delay in the completion of the premises.
Defendant, in its answer and counterclaim, admits the execution of the lease, denies any modification thereof, denies tender of rent by the plaintiff constituting default of the terms of the lease, admits demand on plaintiff, for payment of rent, and alleges that plaintiff took possession of the premises and that notification was given the plaintiff of the election by defendant to terminate the lease. Defendant prayed for judgment for rent payment and an order directing plaintiff to vacate the premises and surrender possession.
Plaintiff answered defendant’s counterclaim with a *555 general denial and, as defenses thereto, sets up the alleged oral modification of the lease and estoppel.
Plaintiff filed a supplemental complaint, alleging partial eviction from the front entrance of the office building and partial eviction from the elevator, by reason of defendant’s having changed the locks and having kept the main entrance locked on Sundays, evenings and holidays. He prays that rent be suspended from March 27, 1962, the date when the front entrance was locked, until the partial eviction is discontinued.
The pretrial order required no answer by defendant to plaintiff’s supplemental complaint since, at the pretrial conference, defendant denied each and every allegation thereof.
The case was tried to a jury. At the close of plaintiff’s evidence the defendant interposed a motion for a directed verdict, on the ground that plaintiff had not sustained his burden of proof. The court thereafter granted the motion for a directed verdict and entered judgment for the defendant.
In its judgment the court dismissed plaintiff’s complaint and supplemental complaint, with prejudice, and rendered judgment for defendant upon its counterclaim for rent in the amount of $1608.08 to date of judgment, with legal interest on rental payments as they should have been made from and after December 1, 1961, until paid; for possession of the leased premises, and costs; ordered plaintiff to pay defendant monthly rental in the amount of $105.38 from date of judgment until the premises were surrendered by plaintiff; dispensed with a motion for new trial, and directed that the parties segregate and impound a certain savings account of plaintiff with defendant corporation in the amount of $2000.00 as a cash bond to secure compliance by plaintiff with the money judgment.
Plaintiff brings the case to this court by writ of error.
There was extensive testimony given as to conversations and negotiations between plaintiff and de *556 fendant’s agents prior to August 8, 1961, the date of the lease, during which time plaintiff repeatedly urged defendant’s agents to make it possible for him to move into the premises as soon as possible because the lease on the premises he then occupied was about to expire. It is well settled law that such conversations and negotiations merged into the written lease, and thus the terms thereof constitute the agreement between the parties.
We now turn our attention to the question as to whether there was an oral modification of the lease, as claimed by plaintiff.
In Paragraph 30 of the lease, lessee agrees that no amendment or modification of the lease shall be valid or binding unless expressed in writing and executed by the parties thereto in the same manner as the execution of the lease. It is admitted that no written modification of the lease, or any of the terms thereof, was ever executed. Plaintiff claims, however, that there was an oral modification. He testified that after several conversations with defendant’s agents he (the plaintiff) addressed a letter to one Hart, leasing agent of the defendant, on September 12, 1961, expressing plaintiff’s views of the result of the conversations. He wrote as follows:
“This is to confirm our agreement of this date that I shall move into the above office space; that such possession by me will not evidence the condition of the premises as being satisfactory; and that rent for the same will commence only upon completion for occupancy for the purpose for which they were rented, including the placement of the numbers T0395’ on the outside of the building, the placement of an office directory in the lobby, the repainting of the east wall of the office, and the other work with which you are familiar.”
Hart denies that he had ever agreed to such a modification, and he did not reply to the letter. The uncertainties attendant to these alleged negotiations give rise to *557 the inevitable conclusion that the fundamental requirement of a meeting of the minds was not obtained.
 This court has held that where one party may have intended a certain obligation by reason of negotiations, and the other party was not in agreement, no contract results. Newton Oil Co. v. Bockhold, 115 Colo. 510, 176 P.2d 904. There was no written modification of any of the terms of the lease and no oral modification was effected by the unilateral action of plaintiff in writing and sending his personal letter. We therefore hold that the evidence does not show any modification of the terms of the lease.
Plaintiff claims a “partial eviction” from the front entrance of the office building and a “partial eviction” from the elevator, because defendant kept the main entrance locked on Sundays, evenings and holidays after March 27, 1962, and plaintiff was compelled to use his key to the back entrance and climb back stairs to his third floor office; that there should be an abatement of his rent until this condition is remedied. Defendant explains that this action was necessary because of possible vandalism and damage in the front lobby should the front door be left unlocked other than during regular office hours.
Plaintiff testified that he often worked in his office on Sundays and holidays, but usually avoided appointments in the evenings, and admits that on at least two holidays in 1961 the building was kept open and on other occasions was opened up at his request when he had an appointment with a client.
 Paragraph 28 (17) of the lease provides that lessor can make such reasonable regulations as it deems necessary for the safety of the building and its tenants. The locking of the front door late at night and on Sundays and holidays, at which times plaintiff had a key affording him access to the building and his office through the rear entrance, is such a reasonable regulation as is contemplated by the paragraph. Plaintiff was not ac *558 tually evicted and, according to the authorities, constructive eviction must be accompanied by an abandonment of possession by the lessee. The general rule is expressed in 32 Am. Jur., Landlord and Tenant, § 250, as follows:
“Abandonment of premises by the tenant within a reasonable time after the wrongful act of the landlord is essential to enable the tenant to claim a constructive eviction based upon that wrongful act, or to defend against liability for rent on account of such act. However much the tenant may be disturbed in the beneficial enjoyment of the premises by the landlord’s wrongful act, there is no constructive eviction if he continues in possession of the whole of the premises. Possession must be given up by the tenant in consequence of the landlord’s acts, and those acts must be such as to justify the tenant in doing so.”
In other words, there was no actual eviction shown in this case, and there was no constructive eviction because plaintiff did not abandon the premises.
In his effort to avoid paying rent, plaintiff relies primarily upon a claimed conflict between two paragraphs of the lease. Paragraph 14 provides that the taking of possession of the leased premises by lessee shall be conclusive evidence as against lessee that said premises were in good and satisfactory condition when possession was taken. Paragraph 26 provides that if the leased premises should not be completed so that the premises are ready for occupancy on the date the term is to begin, rent shall not commence until the premises are ready for occupancy, and the allowance for this rental delay shall be in full settlement of all claims the lessee might have for delay in occupying the premises.
We see no conflict between the two provisions of the lease. It is apparent that Paragraph 26 provides that if the leased premises are not ready for occupancy on the day the term of the lease is to begin, the lessee need not move in and take possession, and until the premises *559 are ready the rent payments are suspended. Paragraph 14 provides that if the lessee moves in and takes possession of the leased premises, this action is conclusive as against him that the premises were in good and satisfactory condition and were ready for occupancy, and rent would commence from the date possession was actually taken.
On or about September 1, 1961, the date the term of the lease began, plaintiff moved his furniture into the leased premises, took possession of the office, and has remained in possession and occupied the premises as a law office continuously up to the date of trial. Plaintiff had his option and exercised his option by moving into the premises while he still maintained that the premises were not completed, thus bringing into effect the provisions of Paragraph 14.
Throughout the case, plaintiff complained of many items that he thought should be completed before the office was ready for occupancy, such as a lack of the number “10395” on the outside of the building, the lack of an office directory in the lobby, failure to repaint the east wall of the office, lack of proper soundproofing, damaged ceiling panels, improper cold and heat controls, a scratch on a window pane, lack of a mail slot in the office door, noisy air ducts, scratched enamel, lack of a sign in the lobby directing attention to the building directory, possible future damage to paint and enamel due to what he considered defective work, and lack of provision for Saturday, Sunday and holiday opening and closing of the building.
It must be remembered that the building was still under construction at the time the lease was signed and plaintiff took possession. The evidence discloses that practically all of plaintiff’s requirements had been met prior to date of trial.
Plaintiff examined the office space on about ten to twenty occasions prior to signing the lease, and on as many occasions between August 8, 1961, and September *560 1, 1961. .Nevertheless, he took possession, paid a month’s rent,- and evidently expected to use the premises indefinitely, rent free, by attempting to invoke the provisions of Paragraph 26 of the lease, which was not applicable to the facts in his case.
In plaintiff’s complaint, he alleges a tender of rent by him to defendant, through a written authorization to withdraw any rent that defendant thought due, from a savings account opened under the name of plaintiff, as trustee, with the defendant corporation in October 1961. This account contained funds of plaintiff and his clients. Defendant understandably refused to take the rent from this account because it did not care to chance taking funds other than those of plaintiff, and possibly suffer later complications resulting from the withdrawal of trust funds belonging to others. Plaintiff did not give defendant his passbook, nor did he offer to make a withdrawal himself and then make a proper tender. This issue has become moot because the parties agreed that plaintiff might continue using the trust account, provided he kept in it at all times sufficient money to cover any rent that might accrue from month to month. This has been done. More than $2000.00 was in the trust account at the time of trial, and in its judgment the court impounded this fund as a cash bond to secure the payment of the money judgment rendered.
Plaintiff attempted to raise other issues during the trial of the case, but in our view the issues were of a minor character and need not be discussed.
The trial court made comprehensive findings of fact and conclusions of law, finding, in substance: that the lease is valid in all respects and defined the rights and liabilities of the parties; that Paragraph 30 of the lease provided that all modifications of its terms be in writing and executed in the same manner as the lease; that plaintiff’s letter of September 12, 1961, did not constitute a modification in conformance with said Paragraph 30; that the taking of possession by plaintiff of the leased *561 premises was conclusive against him that said premises were fit for occupancy under Paragraph 14 of the lease; that a forfeiture was declared by defendant pursuant to the terms of the lease for nonpayment of rent; that plaintiff went into possession under said Paragraph 14, continued in possession, and is still in possession and has paid no rent; that plaintiff’s authorization to defendant to withdraw funds from plaintiff’s trust account did not constitute a tender of rent; that there was no eviction of plaintiff from any portion of the leased premises to entitle him to defer rent payments.
In its judgment the trial court did not include rental for the month of September 1961, on the grounds that defendant’s agent had agreed that the payment of rent for said month might be waived, as a concession to plaintiff’s various claims made during the trial.
 The trial court heard all of the evidence submitted by the plaintiff and thereafter granted the defendant’s motion for a directed verdict. This determination, in and of itself, commands that the judgment should not be disturbed when it is fully supported in the record. In Nelson v. Centennial Co., 130 Colo. 66, 273 P.2d 121, this court, in substance, held that where a trial court directs a verdict, exercising sound judicial discretion, its action is entitled to the same presumption of regularity and validity as is accorded to any other type of judgment.
We have carefully studied and considered the voluminous record, exhibits and briefs, and are in full accord with the ruling and judgment of the trial court.
The judgment of the trial court is affirmed.
Mr. Chief Justice Pringle and Mr. Justice Day concur.