[No. 5506.]

## Fidelity and Deposit Company v. The Colorado Ice and Storage Company.

1. **Employee's Bond—Construction—**A bond conditioned to indemnify an employer against losses by embezzlements and other like misconduct of an employee, is a contract of insurance, and to be construed as such. Ambiguous language is to be taken in a sense favorable to the employer.—(446)

2. **Statements of the Employer** to be taken as representations merely and not as warranties, unless the bond so expressly declares.—(448)

The employee's statement being that the employee will account for his collections daily is not departed from by allowing the employee, after his report, and the examination of it by the cashier, to go with the amount by him collected, and other collections, to the bank, deposit, and return to the cashier the pass book showing the amount deposited.—(450, 451)

3. **Change in Duties of Employee** is no defense to an action on the bond where it is apparent that it was not the employer's intention to restrict the employee to the duties about which he was then employed, and the insurer so understood, unless it be shown that the added duties occasioned the defalcation.—(449)

4. **Evidence—Burden of Proof—**In the action upon an employee's bond, the defendant pleading that the moneys embezzled by the employee were expended by him in treating customers of the employer, while acting as a solicitor for business by the employer's instructions, has the burden of proving this defense.—(449)

5. **Evidence—Measure of Proof Required—**The employer, suing upon the employee's bond and alleging embezzlement by the employee, is not required to show the embezzlement beyond reasonable doubt. A mere preponderance of the evidence suffices.—(449)

6. **Appeals—Harmless Error—**The refusal to allow a witness to be examined as to a point upon which there is competent and uncontradicted testimony by another witness is harmless.—(452)

7. **Employee's Bond—Duty of Employer, as to Habits of Employee—**Where there is no requirement to that effect in the bond the employer is not under duty to make continuous effort to be advised at all times of the habits of the employee.—(454)

*Appeal from Denver District Court*—Hon. JESSE G. NORTHCUTT, Judge.

Mr. GUY LE ROY STEVICK, for appellant.

Messrs. GOUDY & TWITCHELL, and Mr. JOHN M. WOY, for appellee.

Mr. JUSTICE HILL delivered the opinion of the court:

This is an action on a bond of indemnity and continuation certificates, issued by the appellant bonding company, a corporation, to the appellee, a corporation, to save the latter harmless and indemnify it against loss occasioned by the larceny or embezzlement of Marion H. Compton, who was in the employment of the appellee, and stated in the bond "as collector and ticket distributor." The indemnity was applied for by Marion H. Compton, the employee.

It appears he first secured a bond upon July 1, 1894, for the term of one year for the same position, although its terms were different, as to the liability of the surety company, than the one sued upon, covering a broader field; and that by certificates of extension this bond was continued in force until July 1, 1899, when the one now in controversy was issued. According to the custom of the company, an employee's statement was required to be signed by the obligee. This was done in the first instance, prior to the issuance of the first bond; that statement contained a list of printed questions calling for answers by the employer, but no such request was made before the issuance of the second bond, but it appears (as was the custom of the surety company) before the issuance of its annual continuation certificate, it required a certificate from the employer as to an examination of the accounts of the employee, in what

capacity employed, etc., and in compliance with such regulation the appellee furnished such certificates annually, from the year 1895 to 1900, inclusive.

The record further shows that Compton, while in the employ of the appellee, was, on or about June 6, 1901, found to be short in his accounts in the sum of $1,905.47. This bond was then in force by virtue of the last continuation certificate. The conditions in the bond as to notice, the furnishing of an itemized statement of claim for the amount of the shortage, etc., were complied with, and, upon appellant's refusal to make payment, this action was brought. Trial to a jury resulted in a judgment for appellee, from which appellant appeals.

Four general groups of assignments of error, including instructions given and refused, have been urged as reasons for the reversal of the judgment.

The first being that the statement of the employer as to the duties of the employee is in the way of a guaranty that, in the future, they will continue to remain as stated in the application, and that, in case of a change of such duties, as urged to have been in this case, it invalidates the bond. The record shows that the bond given states it was issued to the appellee to reimburse it to the extent of $2,000.00, etc., for loss sustained by any act of larceny or embezzlement of Marion H. Compton, who was in the employment of the appellee "as collector and ticket distributor," and it is claimed by the appellant that, after the issuance of the bond sued upon, Compton's duties were enlarged, and he became a solicitor of business for the company, and on account thereof, he visited saloons and sundry other places which were not contemplated by his bond, and for that reason invalidates the same. In this case, it might be questionable as to whether or not the validity of the present bond could be tested upon the question

as to the truthfulness of the answers to the questions
in the original application of the employee and em-
ployer, for the reason (not necessary to determine
in this case), it is questionable as to whether or not
they were any part of the basis for the issuance of
the present policy, it being different in form and
limited to a smaller scope of liabilities upon the part
of the appellant than the original policy; but for the
purposes of this contention, assuming that the origi-
nal application and statement was the basis for this
policy, as held by the lower court, we find, in the
statement of the appellee, in answer to the question,
"What duties will devolve upon him?" (referring
to Compton), the answer was, "Distribute ice tick-
ets, sell and collect for them, and collect ice bills."

In addition to this, we find thereafter, each year
on or about the month of June, the appellee, at the
request of the appellant, in compliance with a pro-
vision of the policy, made a certificate as to the ex-
amination of the accounts of said Compton, and as
to what his duties then were. In the one May 31,
1895, it states: "Marion H. Compton, in our em-
ploy as collector, ticket agent, banking clerk, etc."
May 31, 1896, it states: "In our employ as collector
& ticket distributor"; June 1, 1897, "collector and
ticket distributor"; May 31, 1898, the certificate
states, "in our employ as collector, etc."; May 31,
1899, "as collector and ticket distributor"; July 1,
1900, it states in one place, "as collector and ticket
distributor"; in another place, "employed as col-
lector."

In the case of the *American B. & T. Co. v.
Burke,* 36 Colo. 49, it was held, in substance, that
these bonds are simply policies of insurance, and,
generally speaking, the same rules of interpretation
and construction apply, and if its language is uncer-
tain or ambiguous, the interpretation must be in

favor of the insured, and if any clause is susceptible. of two constructions, one in favor of the insured and the other against, the former will prevail, if consistent with the general object for which the bond is given, and statements or declarations by the insured are to be taken as representations merely, and not warranties, unless the written contract of indemnity itself expressly, or, by appropriate references, makes them warranties. In this case, the application of the employee, the original statement of the employer and its annual certificate thereafter, with the answers therein above indicated, show, conclusively, that it was not the intention of the employer, and could not have been so understood by the insurer, that the employee's duties were to be exclusively limited to collector and ticket distributor. The company was so advised by these statements, that the employment of Compton was not limited to one particular line, but was varied, and under this condition, with this knowledge in its possession and its willingness to continue to accept the premium thereon from year to year for seven years, we do not think it is now in a position to make this contention in an attempt to avoid its liability under the provisions of this policy, unless it could show that these extra duties were the cause of the defalcation or led to the same, which was properly submitted to the jury.

Further, we find no statement in the application or employer's certificate in connection therewith, that his duties could not, or would not, be changed, and had the appellant, who prepared these statements, desired to have it understood that the duties of the party so insured should be limited to certain lines, and should not thereafter be changed during the existence of the policy, or that any change would terminate their liability thereunder, they could have

had it stated in the policy, and, by not doing so, we are of the opinion that the proper interpretation to be given is, that the statements so made were representations only as to the employee's duties as they existed, and not guaranties that they would continue exactly so in the future, except where otherwise stated, as to what would be done in the future, and where the same is made the basis of the issuance of the policy, as was held in the case of *United States Fidelity & Guaranty Co. v. Downey, etc.*, 38 Colo. 414.

The second group of assignments urged by appellant is the giving of instruction No. 6 and the refusal to give instructions Nos. 4 and 7, offered by it. Instruction No. 6 given, standing alone, placed the burden of proof upon the appellant to sustain one of its affirmative defenses, that the moneys alleged to have been embezzled by Compton, which created a portion of his shortage, was used by him in the buying of liquors and cigars in saloons and in treating customers of the appellee and others while acting as a solicitor of business for it, and by its instructions and consent.

Instruction No. 7, offered and refused, advised the jury that a misappropriation of the funds of appellee was not sufficient of itself to justify a recovery upon the bond, but the proof must show the larceny or embezzlement of the moneys sufficient to warrant a conviction upon a criminal charge.

In instruction No. 3 given, the court correctly stated the burden of proof rested upon the plaintiff to make out its case by a preponderance of the evidence, and that it might do so by showing that Compton collected money from customers of plaintiff belonging to the plaintiff, which he failed to account for and pay to the plaintiff upon demand, and which he fraudulently appropriated. We think the evidence sufficient to show the loss occurred out of

moneys received by Compton as collector for the company, and the question of its embezzlement was fairly submitted to the jury by instructions Nos. 2 and 3, and that instruction No. 6, which was the one affirmative defense attempted to be made by the appellant, was not in conflict therewith, and, being an affirmative defense so pleaded by the appellant, the burden of proof was properly upon it to sustain that contention when the fact of embezzlement had once been established.—*Fairbank v. Irwin*, 15 Colo. 366; *Goldman v. Fidelity & Deposit Co.* (Wis.), 104 N. W. 80; *Perpetual Ass'n v. U. S. Fidelity Co.*, 118 Iowa 729.

Besides, instruction No. 8 given, informed the jury, if Compton acted as solicitor in addition to collector, and they found that such additional duty was the cause of the defalcation or led to the same, the plaintiff could not recover, which was as favorable to the appellant as it was entitled to under the evidence, and was sufficient reason for the court's refusal to give instruction No. 4 offered by the appellant upon the same question.

We are, further, of the opinion that, in a civil action of this kind, an instruction which required the plaintiff to make out its case by a preponderance of the evidence as to the embezzlement or larceny of funds, is sufficient, and considering the purposes for which such indemnity bonds are made, the terms "larceny" and "embezzlement," as used therein, are intended to mean in their commercial sense, and that it was not error to refuse to give instructions which, in substance, required the plaintiff to establish this fact beyond a reasonable doubt, as in criminal cases, and that the proper construction of the language of the entire bond with the application and other transactions, did not contemplate it would be necessary, in order to recover in a civil action,

that the evidence should be sufficient in all respects to warrant the conviction of the employee in a criminal case.—*Fidelity & Casualty Co. v. Eickoff*, 63 Minn. 170; *London Guaranty & Accident Co. v. Hoehelaga Bank, Quebec*, L. R. 3 Q. B. 25; *American Surety Co. v. Pauly*, 72 Fed. 484; *The American Bond, etc., Co. v. The Milwaukee Harvester Co.*, 91 Md. 733.

The third group of assignments urged relates to the refusal of the court to give instruction No. 10 asked by the appellant, and in the giving of instruction No. 2 by the court, both of which relate to the application of Compton for the securing of the policy and the statement of the appellee as his employer in connection therewith, which questions and answers to the employer were as follows:

"Q. Will his duties embrace the custody of cash? * * * A. Yes, his daily collections, which are reported and paid to cashier every evening.

"Q. To whom will he account for same, and how frequently will be make settlements? A. Daily, to the cashier."

It is contended by the appellant that the evidence shows that these answers were not complied with for the reason that Compton, instead of paying the money over to the cashier daily, a part of the time took it to the office of the company in the evening and placed it in a tin box and handed it to the cashier, who would place the box in the company's safe and, in the morning, the cashier would check up the amount of his accounts and make a banking list for deposit, and he (Compton) took both the money which he had collected and the money which the cashier had collected the day previous, to the bank, and deposited it, and then returned the bank-book, thus advising the cashier of the amount which he had deposited, and its contention is this method was

entirely different and made the risk much greater than that agreed upon in the employer's statement.

The evidence as to the details of the system followed in each instance was conflicting, but, from the whole, we are of the opinion it fairly shows that the system followed was not in violation with the answers given to the questions above stated; the conflict being as to the details only, all of the evidence going to show conclusively that Compton made reports daily, and they were so checked up by the cashier, under which testimony there was nothing which justified or required the giving of instruction No. 10, offered by appellant.

The fourth group of assignments urged upon behalf of the appellant, relates to the sufficiency of the evidence of the examination made by the appellee on June 26, 1900, relative to the certificate furnished by the appellee to the appellant, bearing date July 1, 1900, concerning the books and accounts of Mr. Compton, in its employ, in which it is stated, ''were examined by us, and we found them correct in every respect, and all moneys handled by him accounted for.''  The first objection in connection with this certificate was the refusal of the trial court, upon objections by the appellee, to allow the witness Thomas to testify as to all the examination he made concerning the certificate, which, it appears, was issued by him as secretary *pro tem.* by instructions of the president, and to the further questions as to what he knew of other examinations by others, and as to whether or not any one advised him that there had been any other examinations except that made by him.

The witness, Thomas, had formerly been an agent of the company, but was not, at the time of the trial, and whether or not the questions asked Thomas were for the purpose of having him contra-

dict his written statement when he was an agent of the company, was immaterial, and the error, if one, in not allowing him to so answer, was not prejudicial to the appellant, for the reason, there was uncontradicted evidence which showed that Mr. Sowers (the former president of the company), together with the cashier, who certainly would have been the most competent to have made this examination, did examine the books and accounts of Mr. Compton on June 26, 1900, and found them correct, as stated in the certificate issued by the company upon July 1st, so the fact whether Mr. Thomas made an examination or not, or whether or not he knew of other examinations by any one, or that he had been advised that there had been other examinations, was immaterial, or harmless error, at least, as there was competent uncontradicted evidence that a reasonably thorough examination had been made by the president and cashier before the certificate was issued by the secretary. The president stated: "I examined the accounts specially myself, before I ordered the secretary to give that instruction" (meaning the certificate) and the matter was gone into in detail at the trial as to just in what manner this other examination was made, and the question fairly submitted to the jury by instruction No. 11 given, which instruction referred to this certificate upon which the continuation certificate was issued, stating therein the substance of the employer's certificate, after which the court added:

"You are instructed that, if you find from a preponderance of the evidence in this case, that the books and accounts of the said Compton were not examined by plaintiff, and were not found correct, then the defendant would not be liable."

Which fairly submitted the question to the jury for its determination.

Other errors assigned in this connection were the refusal of the court to allow the witness, Maitland, to give testimony as to the statement made to him by Mr. Sowers (the former president of the appellee) concerning his, Sowers', knowledge of gambling by Compton, which testimony, it appears, was first admitted, and, afterwards, upon motion, stricken from the record, and it appears therefrom that this conversation between Sowers and the witness, Maitland (a representative of the appellant) took place upon Saturday, June 9, 1901, after Mr. Sowers had reported the shortage of Compton to the company, in which Sowers is alleged to have stated that some time previous he, Sowers, had taken Compton into his private office, after having heard that he was guilty of gambling, and had a talk with him about his gambling, and that Compton promised not to be guilty of gambling in the future. It appears the theory of the trial court was, unless the defendant could show that plaintiff had this knowledge at the time the certificate, dated July 1, 1900, was issued, this evidence was immaterial.

At the time of this trial, Mr. Sowers was deceased, and there is nothing in the evidence to show that any officer of the company had any information as to any bad habits of the man Compton at the time of issuing the last certificate, and, from a general study of the record, it would appear, if such information came to their knowledge, it was a very short time prior to ascertaining and reporting the shortage in his accounts.

There is nothing in the application or renewal of the bond which required the appellee to make continuous effort to be at all times thoroughly advised as to the habits of the employee, or to give notice to the appellant of such conduct if ascertained after the certificate of renewal issued. In fact, one of the

purposes for which the bond is required is the desire to have the employee bonded to avoid loss in case .his habits thereafter become such as to occasion a shortage by larceny or embezzlement. If the employer, under a bond of this kind, could be held to continued· diligence in making investigations as to the habits and character of the employee during the entire period he is so bonded, it would relieve, to a certain extent, the necessity of desiring such bonds at all, and under the facts here shown this evidence so offered was immaterial.—*American Surety Co. v. Pauly*, 72 Fed. 470.

Other errors urged have been considered, one being upon the question of the itemized statement furnished of the loss, which statement, we think, was sufficient for the purposes intended; and from a careful review of the entire record, we are of the opinion that no error was committed ·in the trial sufficient to warrant a reversal, and the judgment is accordingly affirmed.    *Affirmed.*

CHIEF JUSTICE STEELE    Mr. JUSTICE GABBERT concur.