## Sam Schaffer, Appellant, v. Park Bowl, Inc., Appellee.

### Gen. No. 45,374.

Opinion filed December 19, 1951. Released for publication January 7, 1952.

LOEFF & PANTER, of Chicago, for appellants.

MARTIN G. LOEFF, of Chicago, of counsel.

BERKE, RUSS & RAWSON, of Chicago, for appellee;
NORMAN S. ROSEN, of Chicago, of counsel.

MR. JUSTICE FEINBERG delivered the opinion of the court.

Plaintiff sued upon a written contract of employment commencing September 1, 1949, and terminating August 31, 1951, which provided for salary of $125 per week. In addition to the salary it provided compensation to plaintiff of 7% of the net profits on the first $100,000 of business for each 12-month period ending August 31st, plus 10% of the gross receipts of defendant in excess of $100,000 for each 12-month period ending August 31st during the life of the agreement. The contract appointed plaintiff general manager of a skating rink operated by defendant. Upon a trial without a jury the court found for the defendant and entered judgment against the plaintiff, from which plaintiff appeals.

Plaintiff on September 1, 1949, entered upon his duties as manager of the roller rink, patronized entirely by colored people. Defendant contends the evidence clearly proves that about the middle of September complaints came to the defendant from many patrons about the change by plaintiff of the tempo of the music, to which the skaters were not accustomed; that it was difficult for them to skate to the new tempo; that he refused to allow the woman patrons to change their regular clothing to skating clothing in the dressing room or washroom assigned to them, but they were compelled to make the change in the open lounge of the arena; that plaintiff had used vile and insulting language toward some of the patrons; that on one occasion plaintiff told some of the patrons that if they did not like the tempo of the music or the way he managed

280

the rink, he would convert the roller rink entirely to white patronage, and that they need not patronize the rink; that defendant complained to plaintiff of his too frequent absences during the hours of business, his failure to watch the box office business and receipts, and, in general, conduct that was inimical to the best interests and good will of defendant's business; that defendant's officers directed plaintiff's attention to the complaints received by them and requested him to restore the tempo of the music as had been in vogue before his employment, and to allow the ladies to change their clothes in the washroom reserved for women; that he promised to make the changes requested; and that he remained in the employment until December 3, 1949, when he was barred from entering the rink and discharged from his employment.

Plaintiff's theory is, assuming but not admitting that the matters complained of were true, which would entitle an employer to discharge an employee, yet where the employer with full knowledge of the conduct complained of retains the employee from November 1, to December 3, and pays him his regular salary, that he thereby condones the misconduct, and such condonation bars his right to discharge the employee for such misconduct, citing *New York Insulated Wire Co. v. Broadnax,* 107 Fed. 634; *Butterick Publishing Co. v. Whitcomb,* 225 Ill. 605; *In re Nagel,* 278 Fed. 105.

Defendant's theory is that the employer may overlook breaches of duty in his servant, hoping for reformation, but if he is disappointed and the servant continues his course of unfaithfulness, he may act in view of his whole course of conduct in determining whether the contract of employment should be terminated. Defendant relies principally upon *Gray v. Shepard,* 147 N. Y. 177, which defendant suggests is the leading case upon the question. In the case cited, the court said:

281

"The claim that the defendant, by retaining the plaintiff in his employment after knowledge of violations of duty, thereby condoned these offenses, and that they could not thereafter be used as grounds for discharge, is without force in view of the fact that his violations were committed from time to time, *continuing until his discharge.*" (Italics ours.)

██ ██ We agree with the rule announced in the latter case, and it appeals to us as sound reasoning. The difficulty, however, with defendant's position is that there is no evidence of any alleged misconduct of plaintiff up to the time of his discharge, after the defendant had full knowledge of such misconduct. When he was discharged on the 3rd of December, there should then have existed a legal cause for termination of the contract of employment. We cannot indulge in any presumption that over the period of a month after defendant learned of the misconduct of plaintiff and the plaintiff's promise to correct the situation, plaintiff continued to be guilty of misconduct which would justify his discharge.

██ The burden of showing good and sufficient grounds for discharge rests upon the employer invoking such as a defense after the servant has proven the contract and its performance by him up to the time of his dismissal. *Campbell v. Fierlein,* 134 Ill. App. 207, 212; *Miller v. Baylis,* 185 Ill. App. 427; *Ludwick v. Root & Vandervoort Engineering Co.,* 148 Ill. App. 632.

██ Plaintiff complains of the receipt in evidence, over his objection, of exhibit 4, which was a petition addressed to defendant, purporting to be signed by a number of the patrons and delivered to defendant. The petition is in the following language:

"We, the undersigned, feel, as young ladies, we should have the respect of the management of Park City

Bowl. Since the new manager Mr. Shafer has been here, he has insulted any number of skaters. He will not let the girls change their stockings and clothes in the ladies wash-room. We feel that any young ladie who has any respect should.

"We asked him for permission, to which he boldly replied: 'If you're too good to change in the lobby you can stay out. I'll make a white rink out of the place.' If there's going to be a white manager, he should at least respect us and treat us as patrons. Will you please do something about this? Thank you."

We think the petition should not have been received in evidence. It is clearly hearsay. If a witness were to undertake to testify to the statements contained in the petition if made orally to the witness by the same persons who signed the petition, obviously such testimony would be pure hearsay. The fact that it was reduced to writing does not take it out of the hearsay rule. The adversary is denied the opportunity for cross-examination of the signers of the petition, touching upon the matters stated in the petition. Upon a retrial of this cause the exhibit in question should not be received in evidence.

We conclude that it was incumbent upon the defendant to show that at the time of the discharge of plaintiff on December 3rd, there had been either repetition of the conduct complained of, or such conduct in close proximity of the discharge date as to constitute legal cause for termination of the contract of employment.

The judgment of the county court is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

KILEY, P. J. and LEWE, J., concur.