No. 17,236.

NELSON v. CENTENNIAL CASUALTY COMPANY.
(273 P. [2d] 121)

Decided July 26, 1954. Petition for rehearing stricken August 12, 1954.

Mr. FRANK L. HAYS, Mr. RICHARD D. HALL, for plaintiff in error.

Mr. JOHN F. MUELLER, for defendant in error.

*En Banc.*

MR. JUSTICE CLARK delivered the opinion of the Court.

NELSON, as plaintiff, instituted an action against defendant corporation on a written contract of employment, which, defendant acknowledged, had been prop-

erly executed and which was admitted in evidence without objection.

By said contract defendant agreed to employ Nelson "as Executive Vice-President of its casualty insurance business" beginning January 1, 1951 and continuing to and including December 31, 1953, "subject to the conditions herein contained." The stipulated compensation was $500.00 per month for the first three months; $525.00 per month for the next three months; $550.00 per month for the next three; $575.00 for the last three months of 1951; $700.00 per month for the year of 1952; $1,000.00 per month for the year 1953; together with a bonus provision, the proceeds of which were to be applied to the purchase of capital stock in the company. Other covenants intended as obligatory upon the part of the company are not here involved.

Paragraph 3 of the contract contains the only covenants thereof to be performed by plaintiff. Thereby he agreed to (1) "Devote his full time and skills exclusively in the services of the employer;" (2) "carry on the business of the employer in a diligent, resourceful and capable manner;" and (3) (not here involved) not indulge in drinking during office hours or so as to affect his work.

Paragraph 8 of the contract provides that: "Failure upon the part of either party to this agreement to perform any or all of the terms or conditions of this agreement, shall be grounds for immediate cancellation of such agreement by the party not breaching such agreement."

By letter on the company's letterhead, signed by its president, under date of April 27, 1951, and addressed to Nelson, notice of termination of the contract was given, the first and only pertinent paragraph thereof being as follows: "For many reasons which I have explained to you, as well as others that have come to me recently, I do not believe that you have carried on the business of Centennial Casualty in a diligent and resourceful man-

ner, as required by your contract of employment. I therefore regretfully inform you that your services are terminated effective as of May 1, 1951." With this letter were enclosed separate checks for plaintiff's wages for the month of April, and a full month's pay for the month of May, less deductions for taxes.

Nelson declined to accept the president's letter as notice of dismissal, as not being authorized by the board of directors, and returned the checks to the office manager. April 30, 1951, the board of directors by letter ratified and confirmed the letter of the president of April 27.

In November, 1951, plaintiff instituted an action in the district court for damages for alleged breach of contract. The matter came regularly on for trial before a jury on June 4, 1953, plaintiff concluding the introduction of evidence in his behalf on the following day; whereupon counsel then representing defendant moved for a judgment of dismissal stating several grounds therefor, among which was, "that the plaintiff by his own testimony shows he did not perform the contract in such manner as was called for by the contract itself," and that, while he had pleaded performance in his complaint, "his testimony shows that he had not so performed." The trial court, after hearing arguments on the motion, continued said cause until June 9th, when he heard further arguments, and at the conclusion thereof granted said motion and entered judgment of dismissal of plaintiff's complaint.

On behalf of plaintiff, appearing here as plaintiff in error, his counsel rely for reversal of the judgment upon three specifications of alleged error, the first two of which go to the same substance: (1) That the motion for dismissal was not proper, there being evidence offered by plaintiff to prove each material allegation of his complaint; (2) that there is in evidence proof of each material allegation of the complaint; and (3) that the grounds alleged in the defendant's motion for dismissal were not proven as a matter of law.

70

■ Counsel for plaintiff rightly contend that in order to sustain a defendant's motion for dismissal, or nonsuit, at the close of plaintiff's case, the court must view the evidence in the light most favorable to the plaintiff, and that where there is substantial evidence tending to establish a cause of action, it is error to direct a verdict in favor of defendant; that it is not for the court to judge as to the weight of the evidence nor the credibility of witnesses. These are well-recognized principles, and the books abound with numerous decisions in support thereof. These principles, however, most usually apply, in instances where there is some conflict between the testimony of two or more witnesses, and in such cases as where the minds of reasonable men might draw different conclusions from the evidence, or by inference properly deducible therefrom. In the instant case, no such situation is presented. Aside from the testimony of one Abright, who testified only concerning the experience and qualifications of plaintiff, all material evidence adduced at the trial to show plaintiff's right to recover under the contract was the testimony of plaintiff himself.

■ No different rule applies here than in the usual case with respect to the burden of proof, and the duty devolved upon plaintiff to show by a preponderance of the evidence that he performed his part of the contract, before he would be entitled to recover in any amount whatever. He categorically stated that he did perform all provisions of the contract obligatory upon him, but such statements are but bare conclusions. When we examine the record — consisting primarily only of plaintiff's own testimony, as aforestated — to ascertain what he actually did by way of performance, little is discoverable in support of his contentions. He asserted that he devoted weeks to the procurement of certain insurance forms, but admitted that they could have been obtained in as many days; he set up files, registers and records, but this required only minor effort and very little time;

he went to Texas presumably to procure field men, but hired none. His admissions make it clear that mainly he was only marking time; and when, as a result of his examination, that situation became clearly apparent, he undertook to justify his position by claiming that that was the plan agreed upon, and that it was not contemplated that any attempt would be made to expand the business until April. If that, in fact, had been the plan, it had well succeeded, for it further appears, from his own admissions, that for the six months of the preceding year before he came to the company, it had written $22,000.00 worth of business, while during the four months of 1951 while he was in charge, its total business written amounted to about $5400.00. Such admissions unfavorably bespeak the full time or skill on the part of plaintiff to be exercised "exclusively in the services of the employer."

This brings us to the second of the two material covenants of the contract agreed to be kept by plaintiff: "To carry on the business of the employer in a diligent, resourceful and capable manner." Again, by his own admissions, we learn from the record how he kept that pledge. When the company's premium reserve fund became impaired, without the consent of or notice to either its president or board of directors, plaintiff employed private counsel in his personal interest and made report to the office of the State Insurance Commissioner of the company's failure properly to maintain said reserve, expecting that thereby the company would be put into immediate receivership. He further admitted having expressed the hope that he would be named receiver. True, he undertook to justify this action on the ground of protecting himself from personal liability; but his testimony in that regard clearly indicates afterthought by way of excuse rather than need of justification at the time. Such skills, resourcefulness and diligence the employer evidently had not bargained for, consequently plaintiff was discharged. In the light of plaintiff's admissions, the

trial court evidently was convinced that defendant's action in this respect was fully justified and that, considering plaintiff's evidence as a whole, he had failed to establish a prima facie case.

 In addition to the legal principles hereinbefore set out, there is another of equal dignity. Where a trial court, from a review of all the evidence adduced, is convinced that there is no basis upon which a verdict in favor of the plaintiff may be supported and that even though the jury should return a verdict in his favor it could not be permitted to stand, it becomes the duty of the trial court, as a matter of law, to direct a verdict in favor of defendant. Where the trial court in so doing exercises sound judicial discretion, its action is entitled to the same presumption of regularity and validity as is accorded to any other type of judgment. That error may have been committed by the trial court is never presumed, but must affirmatively be made to appear. Here we have the bold, bare statement of plaintiff, that he fully complied with his contract; but every circumstance; every inference justified by the record; and in fact the admissions of plaintiff himself are in contradiction of his contentions. "Where but one inference or deduction is justified by the evidence, where but one conclusion can be drawn therefrom by reasonable men, or where a verdict for plaintiff, if rendered, ought to be set aside, the court should, on proper motion, direct a verdict for defendant." *Fedderson v. Goode*, 112 Colo. 38,. 45, 145 P. (2d) 981; *Farr Co. v. Union Pacific Railroad Co.*, 106 F. (2d) 437, a Colorado case from the Tenth Circuit Court of Appeals. Many other Colorado authorities might be here cited, but we confine ourselves to but a few to show the antiquity of the rule. *Brown Brothers & Co. v. Potter*, 13 Colo. App. 512, 514, 58 Pac. 785; *Weston, Admr. v. Livezey*, 45 Colo. 142, 155, 100 Pac. 404; *Webster v. Rhodes*, 49 Colo. 203, 207, 112 Pac. 324; *Miller v. Farmers Bank & Trust Co.*, 82 Colo. 373, 379, 260 Pac. 112.

"It seems clear to us from the foregoing that had this cause gone to the jury and any verdict for Fedderson [Nelson] been returned it would of necessity have been set ·aside. Hence the instructed verdict was correct." *Fedderson v. Goode, supra.*

The judgment is affirmed.