Warren M. DIODOSIO, John Diodosio, and Charles Diodosio, Plaintiffs–Appellees and Cross–Appellants,

v.

WESTERN DISTRIBUTING COMPANY, d/b/a Western Davis, Ltd., a Colorado corporation, and Mike Diodosio Wholesale Liquor Co., a Colorado corporation, Defendants–Appellants and Cross–Appellees.

No. 89CA1314.

Colorado Court of Appeals, Div. I.

Sept. 26, 1991.

Rehearing Denied Nov. 7, 1991.

Certiorari Granted Feb. 24, 1992.

Cohen, Brame & Smith, P.C., Jeffrey L. Smith, Jeanne M. Rubin, Denver, for plaintiffs-appellees and cross-appellants.

Horowitz & Berrett, P.C., Jay S. Horowitz, Kim E. Ikeler, Denver, for defendants-appellants and cross-appellees.

Opinion by Judge SILVERSTEIN *

Defendants, Western Distributing Company, doing business as Western Davis, Ltd. (Western), and Mike Diodosio Wholesale Liquor Co. (Wholesale), appeal from the judgments entered by the trial court on jury verdicts, in favor of plaintiffs, Warren M. Diodosio (Warren), John Diodosio (John), and Charles Diodosio (Charles). We affirm.

Prior to February 11, 1986, the three plaintiffs owned all the stock in Wholesale. On that date, Western purchased all the Wholesale stock from plaintiffs. The stock purchase agreement provided, as part of the consideration, that Wholesale enter into an employment agreement with Warren, and a consulting agreement with John. Both agreements were guaranteed by Western.

The employment agreement between Warren and Wholesale was for a term of five years, as was the consulting agreement between John and Wholesale. Warren's contract provided that his services would be consistent with those services historically performed by him prior to the sale. The record establishes that Warren acted as chief operating officer and, admittedly, ran Wholesale "lock, stock and barrel." Warren's salary was $50,000 a year together with other perquisites.

John's consulting agreement provided that he would remain as president of Wholesale, with a salary of $50,000 plus other benefits. He was also given the op-

---

* Sitting by assignment of the Chief Justice under provisions of the Colo.Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

tion to retire as president at any time and become a consultant at the same salary.

On November 7, 1986, Warren and John were fired by Western, and their contracts were declared null and void. On November 13, 1986, John exercised his option under the consulting agreement, which defendants refused to honor.

On November 18, 1986, plaintiffs commenced this action. In their complaint, plaintiffs alleged that defendants had breached the employment agreement by taking various steps to prevent Warren from performing the services assigned to him under the agreement and by wrongfully discharging him without cause. Plaintiffs also alleged that defendants breached the consulting agreement by asserting that the consulting agreement automatically ended with the termination of the employment agreement and by defendants' refusal to honor John's exercising the option to retire as president and became a consultant.

Defendants denied the allegations of breach of contract and asserted several affirmative defenses, including the allegation that plaintiffs "were terminated for 'cause.'" Trial was to a jury which, under special verdict forms, awarded Warren $700,000 and John $268,000 in damages.

## I.

Defendants contend that the trial court erred in instructing the jury as to burden of proof. We disagree.

The trial court's instructions on defendants' affirmative defenses, including which acts or failure to act by Warren constituted cause for termination of his employment contract, were accepted by both parties.

The court also instructed the jury that in order for Warren to "recover on his claim for breach of contract you must find that the following have been proved:

"1. There was an agreement between Warren M. Diodosio and Wholesale, ... which called for [Warren] to devote his full time and efforts to the business and affairs of the company, and to use his best efforts to promote the interests of the company.

"2. Plaintiff [Warren] was damaged by his discharge."

The instruction further stated that if either of the two propositions had not been proved by a preponderance of the evidence, then the verdict must be for defendants.

The instruction also stated that if both propositions had been proved by a preponderance of the evidence, then the verdict of the breach of contract claim must be for Warren "unless you should also find that, as to [Warren's] claim for breach of contract, Wholesale has proven one of its affirmative defenses by a preponderance of the evidence."

Defendants objected to this instruction and tendered an instruction that included two additional propositions to be proven by a preponderance of the evidence, namely: that "Defendant Wholesale discharged Warren M. Diodosio without cause," and that "Plaintiff Warren M. Diodosio performed all of his obligations under the Employment Agreement." This tendered instruction was properly refused.

### A.

■ The proposition that Warren had to prove performance of all the obligations of the contract is inappropriate here. The complaint was based on alleged breaches of the contract by defendants through actions taken to prevent Warren from being able to perform those services "that would be consistent with those services historically performed by him prior to the sale." The evidence supports those allegations. Hence, the tendered proposition was not germane to the issues and was properly refused. *See Foster v. Feder*, 135 Colo. 585, 316 P.2d 576 (1957).

### B.

■ The proposition that Warren had the burden of proving that his discharge was without cause was properly refused because it is not a correct statement of the law. As was stated in *Pittman v. Larson Distributing Co.*, 724 P.2d 1379 (Colo.App.

1986): "Where one is employed for a definite term and is discharged before the expiration of the term without fault on his part, a prima facie case of wrongful discharge is made out."

As stated in *Lucas v. Whittaker*, 470 F.2d 326 (10th Cir.1972): "Although it is generally held that an employee claiming breach of an employment contract has the burden of proving the employer's breach ... when the employee establishes the breach, the burden is on the employer to show justification." And, "The burden of proof, as well as the burden of going forward, in discharging an employee for cause is on the employer, not the employee." *Reussow v. Eddington*, 483 F.Supp. 739 (D.Colo.1980). *See Little v. Dougherty*, 11 Colo. 103, 17 P. 292 (Colo.1887), *but see Nelson v. Centennial Cas. Co.*, 130 Colo. 66, 273 P.2d 121 (Colo.1954).

### C.

Defendants assert the same grounds of error relative to the instructions pertaining to John's claim for breach of his consulting agreement. The conclusions reached above also apply here. Hence, the instructions as given were proper.

### D.

■ Defendants next claim that, since they had the burden of proof as to their affirmative defenses, they should have been allowed to open and close in the introduction of evidence. Not so. Plaintiffs had the burden of proving their claims of breach of contract before any obligation arose on the part of defendants to prove their defenses. Hence, plaintiffs were the proper parties to open and close. *Mastin v. Bartholomew*, 41 Colo. 328, 92 P. 682 (1907).

### II.

■ Defendants claim that the jury verdicts improperly include pre-judgment interest, and they request that this court reduce the judgments by eliminating those portions which constitute pre-judgment interest. Under the circumstances of this case, we cannot alter the verdicts of the jury or the judgments.

The only direct evidence as to the amount of plaintiffs' damages was offered by plaintiffs' expert who presented schedules which showed Warren's damages to be $578,170 without interest and $705,710 with interest. The jury awarded Warren $700,000. As to John, the schedule showed his damages to be $197,979 without interest, and $241,652 with interest. The jury awarded John $268,000 in damages. In a third verdict, not appealed from, the jury awarded Warren, John and Charles, damages in the amount of $95,000 although $124,000 was requested.

In computing the schedules, factors other than the salaries of Warren and John had to be considered. These factors included the added perquisites which were included in their contracts. Warren was to get the use of a car, including insurance and cost of maintenance. He also was to receive health insurance and, in consideration of his agreement not to compete he was to receive 2.755 percent of qualifying sales provided those sales equalled or exceeded certain sales in the Denver office of defendant. In computing these damages the witness relied on various assumptions and estimates which were questioned by defendant in its cross-examination.

Likewise, John's damages included certain variables which involved assumptions and estimates. These involved John's contract right to the use of a Cadillac and reimbursement for business expenses.

Defendants objected to submitting that part of the schedules which included interest. The court sustained the objection and ordered the jury to disregard it. Thereafter, no further reference to interest was made at trial, in the instructions to the jury, or in the special verdict forms.

As to damages, the jury was instructed: "To award any actual damages, you must find ... that a particular plaintiff has incurred actual damages as a result of the breach and the amount thereof." The jury was further instructed that: "Difficulty or uncertainty in determining the precise amount of any damage does not prevent

you from deciding an amount. You should use your best judgment based on the evidence."

Although the jury's verdicts were somewhat similar in amount to the figures submitted by the expert, the record does not support defendants' contention that the verdicts "necessarily" included pre-judgment interest.

 In *Blades v. DaFoe,* 704 P.2d 317 (Colo.1985), our supreme court stated: "[I]t is the policy of the law to look with disfavor on any attempt to invade the jury's internal processes of decision making in order to obtain evidence necessary to impeach verdicts, except in relatively rare cases." Those rare cases involve jury misconduct and external influences, *Santilli v. Pueblo,* 184 Colo. 432, 521 P.2d 170 (1974), which are not present here. In *Aldrich v. District Court,* 714 P.2d 1321 (Colo.1986), it was held: "The verdict of a jury is not subject to impeachment on grounds which require the court to inquire into the jury's mental processes in reaching its verdict.... The rationale underlying the rule is to protect the integrity and finality of the jury's verdict and to prevent harassment or coercion of the jurors after they have announced their verdict."

We cannot substitute our conclusions for those of the jury. *Bohlender v. Oster,* 165 Colo. 164, 439 P.2d 999 (1968).

Since the trial court did not order payment of prejudgment interest, we do not address defendants' contention that the trial court erred in granting such interest.

### III.

Defendants' contentions that the trial court erred in refusing to allow two improperly endorsed witnesses to testify are without merit. *See* C.R.C.P. 16(h).

### IV.

We find no error in the trial court's denial of John's motion for attorney fees. *See*

*State Farm Mutual Auto. Ins. Co. v. Sanditen,* 701 P.2d 876 (Colo.App.1985).

Judgments affirmed.

PIERCE and DUBOFSKY, JJ., concur.