**WESTERN DISTRIBUTING COMPANY, d/b/a Western Davis, Ltd., a Colorado corporation, and Mike Diodosio Wholesale Liquor Co., a Colorado corporation, Petitioners,**

v.

**Warren M. DIODOSIO, John Diodosio, and Charles Diodosio, Respondents.**

No. 91SC728.

Supreme Court of Colorado,
En Banc.

Nov. 23, 1992.

Rehearing Denied Dec. 14, 1992.

Senn, Lewis, Visciano, Hoth & Strahle, P.C., Mark A. Senn, Frank W. Visciano, Horowitz & Berrett, P.C., Jay S. Horowitz, Denver, for petitioners.

Cohen, Brame & Smith, P.C., Jeffrey L. Smith, Marisa L. Williams, Denver, for respondents.

Justice QUINN delivered the Opinion of the Court.

In *Diodosio v. Western Distrib. Co.*, 826 P.2d 383 (Colo.App.1991), the court of appeals affirmed a judgment entered on jury verdicts in favor of the plaintiffs, Warren M. Diodosio, John Diodosio, and Charles Diodosio, against the defendants, the Mike Diodosio Wholesale Liquor Company and

the Western Distributing Company, for breach of contract as a result of an Employment Agreement with Warren Diodosio, a Consulting Services Option Agreement with John Diodosio, and a stock purchase provision of a Purchase and Sale Agreement with the three Diodosios. The court of appeals held that the trial court did not err in refusing to instruct the jury that the Diodosios, in order to recover on their respective claims, had the burden of proving that they performed their obligations under their respective contracts and were discharged without cause. We granted the Diodosio Wholesale Liquor Company's and the Western Distributing Company's petition for certiorari to determine whether the court of appeals correctly resolved the issue pertaining to the burden of proof on the Diodosios' claims for breach of contract. We hold that the court of appeals erred in not requiring the Diodosios to prove, as an essential element of their claims for breach of contract, that they performed their contractual obligations or that there was a justifiable reason for nonperformance. We accordingly reverse the judgment of the court of appeals and remand the case for a new trial.

## I.

The Mike Diodosio Wholesale Liquor Company, (Wholesale Liquor) and the Western Distributing Company (Western) are Colorado corporations in the business of purchasing and distributing wines and liquors to retailers in Colorado. Prior to February 1986 Wholesale Liquor was owned by Warren and Charles Diodosio, who are brothers, and their uncle, John Diodosio. In February 1986 Western entered into a Purchase and Sale Agreement with the Diodosios to purchase all the outstanding stock of Wholesale Liquor from them.

The Purchase and Sale Agreement required Wholesale Liquor to enter into an Employment Agreement with Warren. Under the terms of the Employment Agreement, Warren was to be employed for five years at $50,000 per year plus benefits as vice president and general manager of Wholesale Liquor. The Employment Agreement expressly provided that Warren would be responsible for the management of the business and would perform substantially the same duties that he performed immediately prior to the sale, and that he could be terminated for cause or for failing to meet certain sales objectives outlined in the agreement.[1] Western unconditionally guaranteed the prompt and complete payment of all funds that may become due to Warren pursuant to his Em-

---

1. Warren Diodosio's Employment Agreement contained a five-year covenant, whereby Warren would not compete with Wholesale Liquor, and required Wholesale Liquor, in consideration of the covenant, to pay each year to Warren the greater of the following: an amount equal to 2.75 percent of the company's net sales during the calendar year or fifty percent of such portion of the company's pre-tax annual income for the immediately preceding fiscal year as shall have been earned on sales within the geographical areas served by Wholesale Liquor. The Employment Agreement also stated that Warren's payment would be subject to the following terms:

(1) If prior to the second anniversary of the date of this Agreement Employee voluntarily terminates his employment under this Agreement or his employment is terminated for cause, he shall be entitled to a portion of the annual compensation provided in [the Agreement] for the year in which such termination occurs pro-rated to the date of termination, but shall be entitled to no further compensation under this Agreement.

(2) If on or after the second anniversary of the date of this Agreement Employee voluntarily terminates his employment under this Agreement or his employment is terminated for cause, he shall be entitled to be paid annually in accordance with [the Agreement] as though he had remained in the Company's employ until February 4, 1991 so long as he complies with the covenant not to compete ...; if after such termination Employee fails to comply with the covenant not to compete, he shall be entitled to compensation under this Subparagraph pro-rated to the date he commences competition with the Company, but shall be entitled to no further compensation under this Agreement.

(3) If Employee is terminated without cause at any time during the term of this Agreement, he shall be entitled to receive compensation in accordance with [the Agreement] as though he had remained employed under this Agreement until February 4, 1991, whether or not he complies with the covenant not to compete contained in [the Agreement].

ployment Agreement with Wholesale Liquor.

The Purchase and Sale Agreement between Western and the Diodosios also required Wholesale Liquor to enter into a Consulting Services Option Agreement with John. This latter agreement provided that John would continue to serve as president of Wholesale Liquor for a period not to exceed five years, that John could retire earlier, that Wholesale Liquor reserved the right to remove him as president, and that upon his retirement or removal Wholesale Liquor would employ him as a consultant at an annual salary of $50,000 plus benefits. Wholesale Liquor's agreement with John also authorized Wholesale Liquor to terminate John in the event of "any default in the performance of any of the Sellers' duties under the Western [Purchase and Sale] Agreement." Western unconditionally guaranteed the prompt and complete payment of all sums that may become due to John under the terms of the Consulting Services Option Agreement.

The Purchase and Sale Agreement provided for a two-phase closing. At the first closing, which took place on February 11, 1986, Western paid the Diodosios partial payment for their shares, executed the Employment Agreement with Warren Diodosio and the Consulting Services Option Agreement with John, and executed and delivered Western's guarantees for Wholesale Liquor's performance under both agreements. The purpose of the second closing, which did not take place, was "to review the accuracy of Sellers' [Diodosios'] representations and Sellers' performance of the terms of this Agreement since the date of the First Closing, and to disburse the Final Payment" in accordance with the computation of accounts receivable, credits, and additional financial data outlined in the Purchase and Sale Agreement.

On November 7, 1986, approximately nine months after the execution of the Purchase and Sale Agreement, Wholesale Liquor terminated Warren and declared the Employment Agreement with Warren and the Consulting Services Option Agreement with John null and void. Six days later,

John, in accordance with the terms of the Option Agreement, exercised his option to serve as consultant upon Wholesale Liquor's removal of him as president. Both Wholesale Liquor and Western, however, refused to honor John's option.

On November 18, 1986, the Diodosios filed a complaint against Wholesale Liquor and Western. Warren's claim was that Wholesale Liquor and Western had breached the Employment Agreement, and John's claim was that Wholesale Liquor and Western had breached the Consulting Services Option Agreement. In addition, Warren, John, and Charles alleged that Western had breached the stock purchase provisions of the Purchase and Sale Agreement. Wholesale Liquor and Western answered the complaint by denying any breach of contract and by affirmatively pleading that Warren was terminated for cause because of his insubordination and unsatisfactory performance of the Employment Agreement, that John's option agreement was contingent upon Warren's continued employment as general manager of Wholesale Liquor, and that the Diodosios' factual misrepresentations during pre-closing negotiations discharged Western of any contractual obligation pertaining to the stock purchase provision of the Purchase and Sale Agreement.

The case was tried to a jury. Warren Diodosio testified that Wholesale Liquor, in violation of the Employment Agreement, substantially reduced his authority and responsibility as general manager, with the result that his ability to effectively manage Wholesale Liquor and to obtain adequate profit margins was impaired. Warren further testified that on November 5, 1986, he was informed by Vieri Gaines, the president of Western, that his manner of operating Wholesale Liquor was unacceptable and that Western was offering him reemployment in Denver. According to Warren, he was shortly thereafter informed that the Employment Agreement was null and void and that his only alternative was to report to work in Denver or to sever his working relationship with Wholesale Liquor. John Diodosio testified that on November 12, 1986, he was informed by Vieri Gaines that

his Consulting Services Option Agreement with Wholesale Liquor was canceled. As a result of the cancellation of Warren's and John's contracts with Wholesale Liquor, the second closing pursuant to the Purchase and Sale Agreement never took place.

Vieri Gaines offered a different version of the events. He testified that Warren was terminated for cause due to his alleged insubordination. Gaines did not dispute that Warren's responsibility as general manager of Wholesale Liquor was significantly changed following the consolidation of Wholesale Liquor and Western. Gaines, however, stated that Warren's responsibility was limited to operating Wholesale Liquor as a branch of the total consolidated operation, that Warren had been advised of that fact in advance of the execution of the Purchase and Sale Agreement, and that Warren failed to effectively implement Western's guidelines relating to pricing, promotion of sales, and other organizational requirements. Regarding John's claim, Gaines testified that Wholesale Liquor's only basis for terminating John was its belief that his contractual rights were entirely dependent upon Warren's continued employment with Wholesale Liquor. Because Wholesale Liquor refused to honor the Consulting Services Option Agreement with John, John's performance as a consultant was never an issue at trial. Gaines also testified that the Diodosios during the pre-closing negotiations made several misrepresentations concerning the financial condition of their company, which were later discovered by Western, and that the second closing never took place.

At the conclusion of the evidence, Wholesale Liquor tendered a jury instruction requiring that Warren and John each prove the following elements on their respective claims for breach of contract: that each of them had an employment contract; that each of them performed their obligations under the contract; that Wholesale Liquor discharged each of them without cause; and that both Warren and John suffered damages as a result of the discharge. Warren and John objected to the instruction because, in their view, their only bur-

den was to prove the existence of a contract and Wholesale Liquor's discharge of Warren and its refusal to hire John as a consultant. The trial court agreed with the Diodosios and gave the following instruction on Warren's claim for breach of contract:

Plaintiff Warren Diodosio First Claim for Relief charges Wholesale with breach of contract. In order for Plaintiff Warren Diodosio to recover from Defendants on his claim for breach of contract, you must find that the following have been proved:

1. There was an agreement between Warren Diodosio and Wholesale, known as the Employment Agreement, which called for Warren M. Diodosio to devote his full time and efforts to the business and affairs of the company, and to use his best efforts to promote the interests of the company.

2. Plaintiff Warren Diodosio was damaged by his discharge.

If you find that any one or more of these propositions has not been proved by a preponderance of the evidence, then your verdict as to Warren M. Diodosio's claim for breach of contract must be for Defendants.

On the other hand, if you find that all of these propositions have been proved by a preponderance of the evidence, then your verdict as to Warren M. Diodosio's claim for breach of contract must be for Warren M. Diodosio, unless you should also find that, as to Warren M. Diodosio's claim for breach of contract, Wholesale has proven one of its affirmative defenses by a preponderance of the evidence. I will charge you later concerning these affirmative defenses.

The trial court also gave a similar instruction on John's claim for breach of contract which stated, in pertinent part, that in order for John to recover on his claim, the jury must find that the following had been proved:

1. There was an agreement between Wholesale and John Diodosio, whereby John Diodosio was to serve as President

of Wholesale and/or as a consultant rendering advice to Wholesale.

2. Plaintiff John Diodosio was damaged by his discharge.

With respect to the stock purchase provisions of the Sale and Purchase Agreement, the trial court instructed the jury that, in order for the Diodosios to recover on their claim, the jury must find that there was an agreement calling for a second closing at which certain financial adjustments were to be made regarding the final payment to the Diodosios, that Western failed and refused to complete the second closing, that additional payment was due to the Diodosios at the second closing and Western failed to make such payment, and that the Diodosios "performed all their obligations under the Stock Purchase Agreement relative to the Second Closing." [2]

The trial court submitted special verdicts to the jury. The jury answered the questions on the special verdicts by finding as follows on the respective claims of the Diodosios: (1) that there was an Employment Agreement between Warren and the defendants, that the defendants discharged Warren without cause, and that Warren was damaged by the discharge in the amount of $700,000; (2) that there was a Consulting Services Option Agreement between John and the defendants, that the defendants discharged John without cause, and that John was damaged by the discharge in the amount of $268,000; and (3) that there was a stock purchase agreement between Western and the Diodosios, that the Diodosios performed their obligations relative to the second closing, that Western refused to complete the second closing, and that a payment of $95,000 was to be made by Western at the second closing. The trial court thereafter entered judgment in the amounts specified in the special verdicts against Wholesale Liquor and Western.

Wholesale Liquor and Western appealed to the court of appeals, which affirmed the judgment. The court reasoned that the trial court's instructions on the elements for the Diodosios' respective claims for breach of contract were appropriate because, in the court's view, the Diodosios had no burden to prove performance of their obligation and the burden of proof in discharging an employee for cause is on the employer rather than the employee. We thereafter granted Wholesale Liquor's and Western's petition for certiorari to consider whether the court of appeals correctly held that the Diodosios had no burden to prove performance of their contractual obligations under the circumstances of this case.

## II.

In the absence of special circumstances not present here, the burden of proof in a civil action is by a preponderance of the evidence. § 13–25–127(1), 6A C.R.S. (1987). The burden of proving a prima facie case for recovery on a civil claim is on the plaintiff. *E.g., Bayly, Martin & Fay, Inc. v. Pete's Satire, Inc.,* 739 P.2d 239, 243 (Colo.1987); *Capital Life Ins. Co. v. Roth,* 191 Colo. 289, 291, 553 P.2d 390, 392 (1976). The burden of proving an affirmative defense rests upon the defendant asserting the defense. *E.g., Union Supply Co. v. Pust,* 196 Colo. 162, 174, 583 P.2d 276, 284 (1978); *Hickman–Lunbeck Grocery Co. v. Hager,* 75 Colo. 554, 559–60, 227 P. 829, 831–32 (1924); *Fidelity & Deposit Co. v. Colorado Ice & Storage Co.,* 45 Colo. 443, 448–49, 103 P. 383, 385 (1909); *Thomas v. Carey,* 26 Colo. 485, 495, 58 P. 1093, 1097 (1899). Once a plaintiff establishes a prima facie case, the defendant may produce evi-

---

**2.** The trial court also instructed the jury that Wholesale Liquor and Western alleged as affirmative defenses that Warren was discharged for cause (i.e., insubordination and misrepresentations of fact during pre-closing negotiations), that John was terminated because of misrepresentations of fact during pre-closing negotiations and that John's employment rights were to end upon Warren's discharge, and that the Diodosios' misrepresentations of fact during the pre-closing negotiations constituted a defense to Western's failure to complete the second closing pursuant to the stock purchase provisions of the Purchase and Sale Agreement. The trial court instructed the jury that Wholesale Liquor and Western had the burden of proving any affirmative defense by a preponderance of the evidence. The Diodosios did not raise any objection to the trial court's instructions on the affirmative defenses.

dence to rebut the plaintiff's prima facie case, but the burden of proof or persuasion on the essential elements of the claim remains with the plaintiff. *See generally Capital Life Ins. Co.*, 191 Colo. at 291, 553 P.2d at 392; *Judkins v. Carpenter*, 189 Colo. 95, 98, 537 P.2d 737, 738 (1975).

■ It has long been the law in Colorado that a party attempting to recover on a claim for breach of contract must prove the following elements: (1) the existence of a contract, *Denver & Rio Grande R.R. Co. v. Iles*, 25 Colo. 19, 25, 53 P. 222, 224 (1898); (2) performance by the plaintiff or some justification for nonperformance, *Lombard v. Overland Ditch & Reservoir Co.*, 41 Colo. 253, 255, 92 P. 695, 696 (1907); *Walling v. Warren*, 2 Colo. 434, 438–39 (1874); *McGonigle v. Klein*, 6 Colo.App. 306, 309, 40 P. 465, 467 (1895); (3) failure to perform the contract by the defendant, *Denver & Rio Grande R.R. Co.*, 25 Colo. at 21, 53 P. at 223; and (4) resulting damages to the plaintiff, *Western Union Tel. Co. v. Trinidad Bean & Elevator Co.*, 84 Colo. 93, 96–97, 267 P. 1068, 1069 (1928). The "performance" element in a breach of contract action means "substantial" performance. Substantial performance occurs when, "although the conditions of the contract have been deviated from in trifling particulars not materially detracting from the benefit the other party would derive from a literal performance, [the defendant] has received substantially the benefit he expected, and is, therefore, bound to pay." *Newcomb v. Schaeffler*, 131 Colo. 56, 62, 279 P.2d 409, 412 (1955).

The plaintiff's burden with respect to the "performance" element is no different when the claim is for breach of an employment contract. For example, in *Saxonia Mining & Reduction Co. v. Cook*, 7 Colo. 569, 572, 4 P. 1111, 1112–13 (1884), this court stated that "[w]here one is employed to serve for a definite term ... and is discharged before the expiration of the term, *without fault on his part,* he has a right of recovery either for the balance of wages due, or damages for the loss he may have suffered by reason of the wrongful discharge." (Emphasis added). Subse-

quent to *Saxonia*, we held in *Nelson v. Centennial Casualty Co.*, 130 Colo. 66, 70, 273 P.2d 121, 123 (1954), that in a claim for breach of an employment contract "the duty devolved upon plaintiff to show by a preponderance of the evidence that he performed his part of the contract, before he would be entitled to recover in any amount whatever." *Saxonia* and *Nelson* are consistent with the case law of other jurisdictions. *E.g., Schaffer v. Park City Bowl, Inc.*, 345 Ill.App. 279, 102 N.E.2d 665, 667 (1951) (after employee has proven existence of contract and employee's performance, burden of showing good cause for discharge rests upon employer); *Johnson v. Jessop*, 332 Mich. 501, 51 N.W.2d 915, 917 (1952) (employee has burden of proof on existence of contract and employee's performance up to discharge); *Begley v. Werremeyer Assocs., Inc.*, 638 S.W.2d 817, 820 (Mo.App.1982) (plaintiff has burden of proving substantial performance at the time of dismissal and, even if defendant rebuts plaintiff's prima facie case, issue of plaintiff's substantial performance is not converted into an affirmative defense which defendant must prove); *Miller v. Young*, 197 Okl. 503, 172 P.2d 994, 995 (1946) (to recover for breach of contract, plaintiff must establish his own performance or a valid excuse for failing to perform); *Lambert v. Equinox House, Inc.*, 126 Vt. 229, 227 A.2d 403, 404 (1967) (employee must "prove his faithful performance" of employment contract).

■ Thus, where a plaintiff seeks to recover for breach of an employment contract, the plaintiff bears the burden of proving by a preponderance of the evidence that he substantially performed his part of the contract or that there existed some justifiable reason for nonperformance, such as, for example, the defendant's conduct in rendering performance impracticable or impossible. Once the plaintiff has established a prima facie case for breach of contract— *i.e.*, the existence of the contract, performance or valid excuse for failing to perform, failure to perform by the defendant, and resulting damages—the defendant may, but is not required to, produce evidence to rebut the plaintiff's claim. The

burden of proof on the elements of the contractual claim, however, remains on the plaintiff throughout the trial. Of course, the defendant bears the burden of proving by a preponderance of the evidence any affirmative defense to the plaintiff's contractual claim. *E.g., Hickman–Lunbeck Grocery,* 75 Colo. at 559–60, 227 P. at 831–32; *Thomas,* 26 Colo. at 495, 58 P. at 1097. It follows, therefore, that the Diodosios had the burden of proving substantial performance or justification for nonperformance as a critical element of their respective claims for breach of contract against Wholesale Liquor and Western. The issue of whether there was just cause for Wholesale Liquor's and Western's cancellation or termination of the respective contracts, however, was an affirmative defense, the proof of which devolved upon Wholesale Liquor and Western.[3]

### III.

We turn then to the state of the record before us on the Diodosios' respective claims for breach of contract. We first consider Warren's claim for breach of the Employment Agreement along with John's claim for breach of the Consulting Services Option Agreement, and then the claim of the Diodosios for breach of the stock purchase provision of the Purchase and Sale Agreement.

### A.

■ The instructions pertaining to Warren's claim for breach of the Employment Agreement provided that, in order for Warren to recover, the jury must find by a preponderance of the evidence that there was an agreement between Warren and Wholesale Liquor which required Warren to devote his full time and efforts to the business and affairs of Wholesale Liquor and to use his best efforts to promote the interest of the company, and that Warren was damaged by his discharge. The theory of Warren was that he had performed or tried to perform his duties under the Employment Agreement, but that Wholesale Liquor had taken actions which interfered with or prevented his performance. Wholesale Liquor and Western countered his testimony by presenting testimony through Western's president, Vieri Gaines, that the actions taken by Wholesale Liquor and Western were necessary in order to consolidate the operations of both Wholesale Liquor and Western and that these actions had been fully discussed with the Diodosios prior to the execution of the Purchase and Sale Agreement. In addition, Gaines testified to various incidents of Warren's refusal to implement the organizational changes resulting from the consolidation. Although the evidentiary state of the record clearly presented a factual question as to Warren's performance of the Employment Agreement, the jury was never instructed that Warren had the burden of establishing by a preponderance of the evidence that he substantially performed his obligations under the Employment Agreement or, alternatively, that Warren was justified in not performing the Employment Agreement due to the conduct of Wholesale Liquor and/or Western in rendering his performance impracticable or impossible.

A separate instruction concerning John's claim for breach of the Consulting Services Option Agreement stated that, in order for John to recover, the jury must find by a preponderance of the evidence that there was an agreement between John and Wholesale Liquor whereby John was to serve as president of Wholesale Liquor and/or as a consultant rendering advice to Wholesale Liquor and that John was damaged by his discharge. Although John's Consulting Services Option Agreement was canceled before John had been provided an opportunity to perform, the jury was never informed that John had the burden of prov-

---

**3.** Wholesale Liquor and Western do not dispute the proposition that the employer has the burden of proving an affirmative defense once an employee has established a prima facie case for breach of contract. Thus, Warren and Charles had no burden to prove that their discharge was without cause because "discharge without cause" is merely the converse of "good cause for discharge" which, as Wholesale Liquor and Western concede, is an affirmative defense to a claim for breach of an employment contract.

ing by a preponderance of the evidence that he was justifiably excused from his performance by reason of the conduct of Wholesale Liquor and/or Western.

Ironically, the trial court did instruct the jury on the Diodosios' remaining claim for breach of the stock option provisions of the Purchase and Sale Agreement that, in order for the Diodosios to recover, the jury must find that "Warren M. Diodosio, John Diodosio, and Charles Diodosio performed all their obligations under the Stock Purchase Agreement relative to the Second Closing." Because the jury was not similarly instructed that Warren and John had the burden of proving by a preponderance of evidence the element of substantial performance or some reason for nonperformance as part of their claims for breach of Warren's Employment Agreement and John's Consulting Services Option Agreement, the jury verdicts for Warren and John and the judgment entered thereon were flawed.

We believe it appropriate to offer this additional comment with respect to John's claim. The question of whether his Consulting Services Option Agreement was contingent upon Warren's continued employment, as claimed by Wholesale Liquor and Western, or was independent of Warren's Employment Agreement, was never resolved at trial, either by the court as a matter of law or by the jury under appropriate instructions in the event the contractual provisions relative to John's option agreement were determined to be ambiguous. *See generally Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313–14 (Colo.1984); *Western Colorado Power Co. v. Gibson Lumber & Coal Co.*, 65 Colo. 288, 291–93, 176 P. 318, 319 (1918); CJI 30:11 to 30:13 and Notes on Use (1990). This issue should be resolved on retrial, as it is central to both John's claim and Wholesale Liquor's and Western's defense to that claim.

### B.

We turn now to the Diodosios' claim for breach of the stock purchase provision of the Purchase and Sale Agreement—a claim to which the parties make only passing reference in their briefs. The Purchase and Sale Agreement, including the stock purchase provision relating to the second closing, was contingent upon the absence of any "material breach by Sellers [the Diodosios] in the performance of their covenants or agreements" and upon the truth and correctness of the representations to Western by the Diodosios. In addition, the Purchase and Sale Agreement expressly provided for the execution by Wholesale Liquor of the Employment Agreement with Warren and the Consulting Services Option Agreement with John. Although the issue of the interrelationship between these agreements was never satisfactorily resolved at trial—either as a question of law by the court, or as a question of fact under appropriate jury instructions if the relevant contractual provisions were determined to be ambiguous—*see Pepcol Mfg. Co.*, 687 P.2d at 1313–14; *Western Colorado Power Co.*, 65 Colo. at 291–93, 176 P. at 319—CJI 30:11 to 30:13 and Notes on Use (1990)—it is at least arguable that the Purchase and Sale Agreement, including the stock purchase provisions relating to the second closing, was interrelated with and contingent upon Warren's and John's satisfactory performance of their respective contracts with Wholesale Liquor. Because the issue of the arguable interrelationship of these agreements was not satisfactorily resolved, and because the trial court failed to instruct the jury that Warren and John had the burden of proving substantial performance or a justifiable excuse for nonperformance of the Employment Agreement and the Consulting Services Option Agreement, we believe that, in the interest of fairness to all the parties, we should reverse that part of the judgment ($95,000) representing the Diodosios' claim for breach of the stock purchase provisions of the Purchase and Sale Agreement and remand the case for retrial on that issue also.

The judgment of the court of appeals is accordingly reversed and the case is remanded to that court with directions to return the case to the district court for a new trial.